MAS Associates, LLC, et al. v. Harry S. Korotki, Nos. 54 & 59, September Term, 2020

**PROCEEDINGS ON REMAND – AUTHORITY OF TRIAL COURT –** Court of Appeals held that trial court's action on remand in reopening counts of unjust enrichment and violation of Maryland Wage Payment and Collection Law and awarding monetary judgments in favor of Respondent, against Petitioners, was not consistent with opinion and mandate issued by Court of Appeals. Both counts had been conclusively decided against Respondent at trial and in favor of Petitioners and were not at issue on appeal in Court of Special Appeals or on review before Court of Appeals. Trial court's judgments against Respondent with respect to unjust enrichment and wage payment claims were final enrolled judgments.

Court of Appeals concluded that because Respondent never sought appellate review of judgments either in Court of Special Appeals through filing of appeal or cross-appeal or in Court of Appeals through filing of conditional cross-petition for writ of *certiorari*, claims could not be reopened and Respondent could not receive benefit of opinion indicating that partnership did not exist.

In addition to finality of judgments against Respondent and circumstance that Respondent failed to seek appellate review of judgments, trial court lacked authority to take any action on remand with respect to one Petitioner who had not been found liable at trial on any count in complaint brought by Respondent and, as such, had not participated in any appellate proceedings. For all of these reasons, trial court erred on remand in entering judgments in favor of Respondent against Petitioners on counts of unjust enrichment and violation of Maryland Wage Payment and Collection Law. Court of Appeals reversed judgments of trial court and remanded to that court with instructions to vacate judgments against Petitioners and to reinstate original judgments in favor of Petitioners.

Circuit Court for Baltimore County
Case No. 03-C-11-010759

Argued: June 3, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 54 & 59

September Term, 2020

_____

MAS ASSOCIATES, LLC, ET AL.

v.

HARRY S. KOROTKI

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Watts, J.
McDonald and Hotten, JJ., concur.

_____

Filed: August 4, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

It is not uncommon for this Court to remand a case to the Court of Special Appeals with a mandate instructing our colleagues to reverse the judgment of a circuit court and remand the case to that court for "further proceedings consistent with this opinion." This case concerns proceedings in a trial court after our issuance of an opinion with such a mandate. In this instance, we address the question of whether the trial court's action on remand in reopening two counts of a complaint and awarding a monetary judgment in favor of the plaintiff (the respondent in this case) on the counts—which had been conclusively decided against the plaintiff at trial and which were not at issue on appeal because the plaintiff never sought appellate review of the judgments either in the Court of Special Appeals through the filing of an appeal or a cross-appeal or in this Court through the filing of a conditional cross-petition for a writ of *certiorari*—was consistent with the opinion issued by this Court.

This is the second time in two years that the parties, MAS Associates, LLC ("MAS"), Petitioner/Cross-Respondent,[1] and Harry S. Korotki ("Harry"),[2] Respondent/Cross-Petitioner, are before us in a case concerning the question of whether a partnership, operating through MAS, was created. In MAS Assocs., LLC v. Korotki, 465 Md. 457, 462-63, 473, 214 A.3d 1076, 1079, 1085 (2019), this Court addressed the question of whether competent material evidence existed to support a finding by the Circuit

---

[1]In this case, Saralee Greenberg ("Saralee") is also a Petitioner/Cross-Respondent.

[2]In the first case, the parties referred to each other using first names. See MAS Assocs., LLC v. Korotki, 465 Md. 457, 463 n.2, 214 A.3d 1076, 1079 n.2 (2019). For consistency with our earlier opinion, we do the same.

Court for Baltimore County, at a bench trial, that three people[3] including Harry intended to form a general partnership and that Harry was entitled to an award of damages on a declaratory judgment count seeking a determination that the partnership existed and the buyout price of his partnership interest. We held that the answer to the question was "no" and reversed the circuit court's finding and award of damages. See id. at 463, 214 A.3d at 1079. Specifically, we held that Harry had "failed to provide competent material evidence demonstrating [an] intent to form a partnership." Id. at 463, 214 A.3d at 1079. Accordingly, we held that the circuit court's finding to the contrary—i.e., that the parties intended to form a partnership—was clearly erroneous and we reversed and remanded the case to the Court of Special Appeals, with instructions to remand to the circuit court "to adjust the damage award in a manner consistent with th[e] Opinion." Id. at 494, 214 A.3d at 1097. Our mandate stated:

> Judgment of the Court of Special Appeals reversed as to finding of partnership. Case remanded to that Court with instructions to reverse the judgment of the Circuit Court for Baltimore County and remand to the circuit court for further proceedings, consistent with this opinion. Costs to be paid by Respondent.

Id. at 494, 214 A.3d at 1097 (bolding and some capitalization omitted).

On remand, rather than vacating the monetary award to Harry for the buyout price of his partnership interest, the circuit court reopened two counts that Harry brought in the original complaint—unjust enrichment and violation of the Maryland Wage Payment and Collection Law—that had previously been adjudged at trial against Harry in favor of the

---

[3]The other two people were Joel Wax and Mark Greenberg, who were defendants in the trial court proceeding.

defendants, including Petitioners in this case.  Harry had never appealed the circuit court's determination against him with respect to the two counts at any time.  Nonetheless, on remand, the circuit court entered judgments in favor of Harry on the two counts against Petitioners in the amount of $572,766.83 (later modifying the judgments to a total of $572,705.08).  Petitioners and Harry both noted appeals.  Thereafter, Petitioners filed in this Court a petition for a writ of *certiorari* and Harry filed a conditional cross-petition.  We granted the petition and conditional cross-petition.  See MAS Assocs., LLC v. Korotki, 472 Md. 313, 245 A.3d 992 (2021).[4]

Against this background, we must consider whether the circuit court erred on remand in reopening the unjust enrichment and wage payment counts and in awarding Harry damages against Petitioners on the claims.  We hold that the answer is unqualifiedly yes.  Accordingly, we reverse the judgments of the circuit court and remand the case to that court with instructions to vacate the instant judgments against Petitioners on the counts of unjust enrichment and violation of the Maryland Wage Payment and Collection Law and to reinstate the original judgments in favor of Petitioners.

---

[4]Ten days after this Court granted the petition and conditional cross-petition, the circuit court issued an opinion and order that minimally adjusted the prejudgment interest amount of the judgments.  Both Petitioners and Harry again noted appeals.  Petitioners also again filed in this Court a petition for a writ of *certiorari*, raising the same issue as raised in the earlier granted petition, and Harry again filed a conditional cross-petition, raising the same three issues he had raised in the earlier granted conditional cross-petition.  We granted the petition and conditional cross-petition and ordered that the case be set for argument on the same day as the earlier granted petition and conditional cross-petition.  See MAS Assocs., LLC v. Korotki, ___ Md. ___, ___ A.3d ___, 2021 WL 1257085 (Md. Mar. 26, 2021).

# BACKGROUND

## Underlying Factual and Procedural History

With respect to the underlying factual and procedural history of this case, we need not recreate something that already exists. Instead, we set forth the history of the case as recently expressed in MAS Assocs., 465 Md. at 463-73, 214 A.3d at 1079-85:

### *Three Separate Entities*

Harry Korotki ("Harry"), the plaintiff in the trial court, has worked in the mortgage industry in various capacities since 1991. In 1999, after the company he worked for suffered a "financial crisis," Harry had to "start over" and opened Savings First Mortgage, LLC with another individual. In 2002, this individual dissociated from Savings First, and Harry became the sole owner. By 2009, business was "very challenged," with banks "not as liberal with [credit] lines," which resulted in it becoming more difficult for "loan officers to go out and sell loans," and thereby negatively impacting profitability.

Joel Wax ("Joel"), a defendant in the trial court proceeding, was the sole owner of Greentree Mortgage Corporation. Greentree also experienced "economic difficulties" beginning around 2009.

Mark Greenberg ("Mark"), also a defendant, had also been in the mortgage industry for a significant amount of time. In 1999, after working for various other mortgage companies, Mark and his wife, Saralee Greenberg ("Saralee"), started MAS Associates, LLC ("MAS"). Saralee became a member of MAS, with a controlling 91% share of interest, and Mark became the manager and CEO and held no ownership interest. MAS was involved in three different lines of business: originating home purchase and refinancing loans, selling home improvement loans, and servicing high-risk loans. MAS was also struggling with business losses in 2009.

### *Initial Conversations About Combining Entities*

In August 2009, with both of their businesses losing money, Harry and Joel engaged in negotiations with the intent to merge their companies and increase profitability. At one point, Joel mentioned drafting a "partnership agreement" and it seems the parties anticipated sharing profits, with Harry stating that "50% of what we can generate together is a whole lot more money

- 4 -

that [*sic*] 100% of what we are making individually." During these conversations, Joel also stated that, "as partners," he "agree[d] that everything should be equitable."

Nevertheless, Harry and Joel's planned merger was put on hold when, in September 2009, Ken Venick ("Ken"), a member of MAS Associates, LLC who held a 9% share of interest, and Mark, expressed interest in "getting involved" in the merger. While Saralee never authorized Mark to sign for her regarding ownership decisions nor did she give him power of attorney, he "represented [her] full interests" in the management of MAS. Under this newly proposed scenario, it was suggested that Equity Mortgage Lending, a registered tradename for MAS Associates, LLC, was the optimal entity for "everyone to fall into . . . ." The parties concluded that Equity Mortgage Lending was the ideal surviving entity because it had a "good track record" in the industry and fewer "legacy liabilities."

The four men then embarked anew on discussions regarding how their three companies might sensibly "merge as one business" and the potential ramifications of such an action. A September 30, 2009 letter from Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC ("Gordon Feinblatt"), a law firm serving as "regulatory counsel" to all three entities, described this plan as one "to join forces and establish a business together in some to-be-determined manner." As part of this initial effort, Harry sent an October 1, 2009 email to a large mortgage loan originator seeking to apply for a warehouse credit line for Equity Mortgage Lending. Harry characterized his interest in this new association as being a "[one-third] owner along with two other partners."

### *Attempt to Become Members of MAS Associates, LLC*

Harry, Joel, and Mark held a meeting on October 13, 2009 to discuss their proposed business structure. They were joined by Elliott Cowan ("Cowan") and Marjorie Corwin ("Corwin"), the regulatory attorneys from Gordon Feinblatt, who had taken on the task of creating a "neutral" draft of the parties' business arrangement. After the meeting, Cowan prepared and circulated a summary of the meeting for review by Harry, Joel, Mark, and their personal legal representatives. This document represents the first unambiguous indication that Harry, Joel, and Mark intended to become members of MAS Associates, LLC, d/b/a Equity Mortgage Lending, replacing Saralee and diminishing Ken's ownership percentage.

During the meeting, the parties discussed the "goal" of ownership in MAS, and contemplated ownership percentages consisting of Harry at 33 1/3%,

- 5 -

Joel at 33 1/3%, Mark at 30 1/3%, and Ken at 3%. Functionally, this would mean that Saralee, and to a lesser degree Ken, would transfer their interest in MAS to Mark, who would in turn transfer membership interest to Harry and Joel. The MAS Associates, LLC Amended and Restated Operating Agreement, adopted in April 2004 ("2004 Operating Agreement"), controlled the operation of MAS during this time. According to Section 9.1 of the 2004 Operating Agreement, such a transfer required a majority vote of the members.

The summary of the meeting indicated that the potential arrangement structured the deal into an "Interim Period" and a "Post-Interim Period." During the Interim Period, Harry and Joel were to be "employees of the Company" subject to for-cause termination and "entitled to receive W-2 compensation equal to 1/3 of the profits of the 'origination division' of the Company . . . ." Their respective companies—i.e., Savings First and Greentree—were to be liquidated and their mortgage lending licenses surrendered. Significantly, the parties never discussed "what would happen if the conditions for Harry and Joel to obtain substantial ownership [were] not obtained by the end of the Interim Period." According to Joel, the Interim Period was intended to be a time during which transitional issues, such as licensing and operations, could be ironed out.

In November 2009, Equity Mortgage Lending arranged to purchase much of Savings First's physical inventory. The parties also made plans to combine staff, and, in December 2009, they moved under one roof. During this time, Saralee authorized Harry, Joel, and Mark to be signatories on five Equity Mortgage Lending bank accounts. The Bank of America paperwork formalizing this transaction denotes Mark as MAS's President and lists both Harry and Joel as Vice Presidents. Harry, Joel, and Mark also agreed to split the legal fees incurred as a result of combining their companies.

On November 25 and 27, 2009, Cowan emailed new drafts of the agreements to Harry, Joel, Mark, and their respective attorneys. The first document, which Cowan termed the "definitive agreement," outlines the interim period, before Harry, Joel, and Mark were to become members. We will refer to this agreement as the Interim Agreement. The second document—which we term the Operating Agreement Outline—contemplates each of the parties' obligations post-membership.

This draft of the Interim Agreement, similar to the provisions outlined in the initial meeting summary, provided that, as of November 30, 2009, Savings First and Greentree would surrender their licenses and discontinue originating loans and that Harry and Joel would be employees of the

company for the "duration of the Approval Period." Again, the agreement stated that Harry and Joel were "entitled to receive W-2 compensation"; "one-third (1/3) of the total economic benefits enjoyed in the aggregate by Mark, Saralee, Ken, Harry, and Joel"; equivalent benefits; and "commission splits on loan originations."

The nature of the parties' relationship to MAS d/b/a Equity Mortgage Lending during this interim period is central to the litigation. Harry characterizes their association as a partnership. And it is true that, at various times via email and in other documents, the parties referred to each other as partners, and Harry's description of the parties as partners regularly went unchallenged. Still, during his testimony, Joel described himself as an "employee of MAS Associates." In fact, he understood that one of the reasons Harry and he were employees, and not owners, was to prevent personal creditors from going after company assets. Cowan also testified that it was his "understanding that Harry and Joel were to be employees during the interim period." He stated that "the entire concept of the interim period was built around an employment relationship that[,] after the approvals were obtained and whatever other conditions there were[,] would change into a different relationship."

Each party was to make a $150,000 payment to Mark, who would then gift the $450,000 to Saralee, who would make a capital contribution to MAS d/b/a Equity Mortgage Lending in that amount. The 2004 Operating Agreement defines "capital contribution" as "the total amount of cash and the fair market value of any other assets of value contributed . . . to the Company **by a Member** . . . ." (Emphasis added.) Thus, Harry, Joel, and Mark, not being MAS members, could not make direct capital contributions under the terms of the operating agreement, making an indirect route necessary to complete such a transaction. The parties indeed made these payments, although not necessarily in the precise manner described above.

On December 1, 2009, Cowan encouraged the parties to come to a final agreement by pressing them to meet. He again circulated amendments to the final documents on December 15, 2009 and recommended that the parties finalize and sign each of the documents by December 22, 2009. As of late-January 2010, no agreement had been reached and Ken's attorney was still raising significant areas of disagreement between the parties. In response to these comments, Mark's attorney circulated amended agreements on January 20, 2010, stating that "so far as we are concerned, you may circulate all documents for signature."

On February 8, 2010, Cowan again circulated the most recent versions of the

various agreements—including the Interim Agreement, the Operating Agreement Outline, and various indemnity agreements. Nevertheless, the documents remained unsigned.

Harry testified that, after receiving the February 8 email from Cowan, Mark approached Harry and Joel to discuss setting the Interim Agreement "on the side" and focusing on the Operating Agreement Outline. Harry stated that "as of that date going forward we treated each other as owners and members." Around this same time, the business began experiencing losses, and Harry testified that Joel, Mark, and he "agreed that [they] were in it for a third no matter what," referring to potentially covering quarterly business shortfalls. During their testimony, Joel and Mark disputed the notion that the parties ever agreed to conduct themselves per the Operating Agreement Outline. They claimed to have agreed to operate under the Interim Agreement until they were making enough money to pay for the lawyers to finish the Operating Agreement Outline. All agree that, over the course of the next several months, the parties looked for ways to "make [the business] work" by cutting overhead expenses and closing more loans.

After two months with no action on the matter, Cowan again emailed Harry, Joel, Mark, and their attorneys on April 13, 2010. Cowan stated that he wanted to "take this opportunity to urge everyone to finalize and sign the transaction documents." He also presciently noted that in "the absence of signed documents, sorting out everyone's respective rights and obligations will be very difficult, to say the least." Harry testified that he was "not aware" of any action taken as a result of this email. Mark testified that the reason the Interim Agreement was never signed was because the business was not doing well, and the parties did not want to spend more money on attorney's fees. Joel attributed the failure to finalize the Interim Agreement largely to Ken and his attorney.

The warehouse lines persisted as a source of friction. The parties seem to have intended to share exposure for these credit lines to some degree, but there was disagreement as to how to achieve equity. In late-October 2010, Harry emailed Mark and Joel to "remind" them that he could not "put [his] name on anything more than [one-third] of [a] [$]7.5 million" credit line. Again, in mid-November 2010, the parties had a conversation regarding another warehouse credit line. Via email, Harry once more expressed his discomfort with signing jointly and severally with Joel and Mark, as Harry believed this would expose his greater assets to creditors. Harry stated that he would be willing to indemnify one-third of all business liabilities, but nothing more.

Mark responded to Harry's concerns by insisting that any "obligations need to be the same for all," and reminded the parties that there must be "equity regarding potential liabilities or the structure can not be equal." Joel characterized Harry's refusal to co-sign the credit lines as "chang[ing] the game in the middle" by refusing to join the others in guaranteeing these lines. Still, the parties looked for a way around this issue by asking Harry to set aside sufficient assets as collateral for his one-third indemnity share, or alternatively finding a non-member ongoing role for Harry. Cowan opined that, while it would be unusual for a typical employee to be expected to guarantee a line of credit, such a circumstance might not be unusual when that employee is expected to become an owner.

By the end of June 2010, Equity Mortgage Lending had begun to turn a profit and the parties decided to begin drawing a salary of $10,000 per month each. Harry described this distribution as an "advance on year end profits." Profits continued into the months of July, August, September, and October. At the end of the year, Harry, Joel, and Mark received W-2 forms from MAS. Harry was paid a total of $325,552 in 2010—Harry characterized this amount as a combination of salary, various profit distributions, and commissions. Though there is some disagreement as to the details regarding the negotiations, it appears the parties eventually settled on a 25/12.5/12.5 percentage split for commissions—with the party originating the loan receiving the larger portion. The other half of the gross profit was paid to the company.

After the year-end distribution of commissions and other income, Harry and Joel agreed to each contribute an additional $125,000 to increase Equity Mortgage Lending's net worth to $1,000,000. These payments were again paid to Saralee as a loan, who would in turn make a capital injection into the company in the same amount. The loans were to be paid back in 30 days, or at the completion of the audit for which the capital injection was made. In a February 15, 2011 email, Harry requested to be reimbursed for this loan, and Mark replied that the parties needed to "sit down and discuss." Harry explained that he agreed to allow the money to remain in the company and maintains that he still has not been repaid for his $275,000 in contributions. Yet, according to Mark, the parties made these loans "as managers" and he testified there was no agreement that the money would be paid back. Likewise, Joel thought of these loans as "the cost of admission" into the company. Promissory notes for these loans were drafted but never signed.

As of November 22, 2010, the parties still contemplated becoming members, or "owners," of MAS and anticipated signing the Interim Agreement by the end of the year. In a December 10, 2010 email to Joel and Mark, Harry

asserted that he had no problem signing the various agreements that had gone unsigned, but again brought up his dissatisfaction with the warehouse loans. In late-January 2011, Saralee, Ken, Joel, and Mark opened a $10 million warehouse line of credit. Once again, Harry refused to sign onto a joint-and-several obligation and only agreed to indemnify the parties for up to one-third of the obligation. Around this time, Harry began frequently missing work and other obligations, such as scheduled meetings with Joel and Mark. This made it difficult for the parties to make decisions about the business, especially regarding the warehouse line and potential indemnification agreements for Harry.

### *Harry's Resignation*

In March 2011, Harry resigned from his position with Equity Mortgage Lending. He indicated that this was pursuant to his doctor's recommendation following months of mental health concerns, including depression and severe anxiety. In an email dated March 20, 2011, Harry set forth an accounting of his requested compensation given his resignation—$275,000 reimbursement for loans paid to Saralee, commission from an in-progress loan closing, payment of health insurance premiums for two years, and, in the case of the sale of the company, 25% of the proceeds in year one and 15% in year two. He did not think it would be "fair" to ask for any additional cut of sale profits. Harry testified that he subsequently met with Joel and Mark, who agreed to repay the $275,000 in loans, but the terms of such a repayment remained unresolved.

Harry spent the first half of April 2011 attempting to arrange a meeting with Joel and Mark to discuss the specifics of his departure. Eventually, Harry became frustrated with their inability to meet, and, on April 13, he emailed Mark and Joel stating that he was "retracting" his initial offer and turning the issue "over to [his] attorneys." Harry's attorneys filed a complaint on October 28, 2011 in the Circuit Court for Baltimore County. While none of the agreements were ever signed, Joel and Mark both testified that they ultimately signed an extension of the Interim Agreement before it was set to expire on November 30, 2012 and that it governed their conduct at the time of the hearing.

### Procedural Posture

In his complaint, Harry raised multiple claims. Most relevant here, however, are his claims for breach of contract and his request for a declaratory judgment asking for, *inter alia*, a determination of "the buyout price of his partnership interest" and a demand that the partners pay such price.

- 10 -

The trial court first issued its opinion from the bench. Regarding the breach of contract claim, the court stated that there could be no breach because there was no contract. Specifically, the court held that "there was never any meeting of the minds as to either the interim agreement or the operating agreement." Nonetheless, the trial court found that a partnership existed between the parties. It determined that the parties' conduct "exhibited what a partnership is" when they made management decisions together and contributed money equally. Consequently, the court awarded Harry $1,097,866-$793,000 base value, $260,712 in interest, and $44,154 for commissions without interest.

* * *

Mark and Joel appealed the decision to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed the trial court's ruling, holding that Harry, Joel, and Mark "entered into a joint venture for the short period of time between not signing the Agreement, and when they could not agree on the terms of a merger, or sign a new interim agreement." *MAS Assocs., LLC v. Korotki*, No. 228, Sept. Term 2015, 2018 WL 4575140, at *20 (Md. Ct. Spec. App. Sept. 21, 2018). Joel and Mark petitioned for *certiorari* in this Court, and we granted their petition.

(Alterations and ellipses in original) (footnotes omitted).

When the case first reached this Court, the posture of the matter was that the circuit court had found that a partnership existed and awarded Harry a monetary judgment on the declaratory judgment count. The Court of Special Appeals had affirmed, holding that Harry, Joel, and Mark entered into a joint venture for a short period of time. Joel, Mark, and MAS had filed a petition for a writ of *certiorari* in this Court, which we granted to answer the sole question of whether a partnership existed. Harry did not file a cross-petition as to any issue.

**MAS Assocs., LLC v. Korotki**

In an opinion issued on August 8, 2019, we held that the record lacked "the

necessary competent material evidence to conclude that the parties intended to form a partnership." MAS Assocs., 465 Md. at 494, 214 A.3d at 1097. In so holding, we first addressed Joel and Mark's contention that MAS could not be the vehicle for a separately formed partnership because MAS already existed as a lawfully formed LLC and the parties were working toward amending the operating agreement to become members of the LLC, not partners. See id. at 479, 214 A.3d at 1088. We explained that although it may be possible to construct a scenario in which the existence of a partnership and an LLC are not "mutually exclusive phenomena[,]" that is not what occurred here. Id. at 478, 214 A.3d at 1088. We determined that "the parties never abandoned their efforts to become members of MAS." Id. at 482, 214 A.3d at 1090. As such, we determined that any action consistent with the mutual understanding to become members of an LLC could not fairly contribute to the existence of an implied partnership. See id. at 482, 214 A.3d at 1090.

We next addressed "factors courts commonly look at to evaluate partnership intent[,]" specifically, management and control of the entity and capital contributions to the entity. Id. at 482, 486, 214 A.3d at 1090, 1093. As to management and control, we concluded that, "[w]hen the parties at issue [were] also actively engaged in the process of negotiating to become members of an LLC, evidence of equal control and joint decision-making authority is not evidence of the parties' intent to form a partnership." Id. at 486, 214 A.3d at 1092. As to capital contributions, we determined that the circuit court erred as a matter of law in characterizing "capital contributions to MAS as capital contributions to an unnamed partnership" because such a conclusion would only be "possible if the LLC and partnership are considered the same entity," which would be in contravention of

- 12 -

applicable law.  Id. at 489, 214 A.3d at 1094.  We concluded that the evidence and applicable law required a finding that Harry's, Joel's, and Mark's "payments were loans to Saralee, not capital contributions to an alleged new entity" and "[a] loan is not evidence of partnership intent."  Id. at 489, 214 A.3d at 1094.

We also addressed the sharing of profits and losses and concluded that Harry had failed to establish that the $5,000 twice-monthly payments he received "should be considered profit sharing, rather than a salary, which can be a share of gross revenue."  Id. at 490, 214 A.3d at 1095.  We stated that the payments were compensation and did not "contribute to any presumption of partnership."  Id. at 491, 214 A.3d at 1095.  We explained that "both MAS and the parties treated their income as wages, not profits, in line with the written contemplations of the parties during their negotiations to become LLC members.  Receipt of wages does not support a finding of partnership."  Id. at 492, 214 A.3d at 1096.  In addition, we stated that the evidence demonstrated that "Harry never intended to be equally liable for the debts of the purported partnership[.]"  Id. at 492, 214 A.3d at 1096.

In conclusion, we summarized our determination that there was insufficient evidence of the intent to form a partnership as follows:

> Harry had the burden of producing sufficient facts to conclusively demonstrate the parties' intent to form a partnership.  Evidence of equal control and joint decision-making authority, under these circumstances, does not support a conclusion of partnership.  Further, the trial court erred as a matter of law when it classified Harry's $275,000 in payments to Saralee as capital contributions, as opposed to loans.  Nor can the wages the parties received be considered profits, here.  First, any presumption of partnership based on profit sharing is undone by the parties' expressed, simultaneous, and unabandoned intent to become members of MAS and their treatment of

the payments as wages. Payments classified as wages are not supportive of partnership. Moreover, Harry actively resisted being held jointly and severally liable for the debts of the purported partnership. For these reasons, even reviewed in the light most favorable to Harry, the record still lacks the necessary competent material evidence to conclude that the parties intended to form a partnership.

Id. at 493-94, 214 A.3d at 1097. We held that the circuit court's "finding to the contrary was clearly erroneous," and reversed and remanded to the Court of Special Appeals, with instructions to remand to the circuit court "to adjust the damage award in a manner consistent with th[e] Opinion." Id. at 494, 214 A.3d at 1097. The mandate stated:

> JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AS TO FINDING OF PARTNERSHIP. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS, CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.

Id. at 494, 214 A.3d at 1097 (capitalization in original) (bolding omitted).

**Motions for Reconsideration**

This Court's initial slip opinion included a misstatement of fact in the "Procedural Posture" section of the background. In this section, the opinion included a sentence incorrectly stating that the circuit "court also found in favor of Harry on the unjust enrichment and wage payment claims."[5] It is undisputed that the circuit court had ruled against Harry on both the unjust enrichment and wage payment claims, and entered judgment in favor of the defendants as to those two counts.

---

[5]In the initial slip opinion, in the first sentence of the "Procedural Posture" section, this Court also stated: "In his complaint, Harry raised multiple claims, including an unjust enrichment and wage payment claim."

- 14 -

On August 23, 2019, MAS, Mark, and Joel filed a motion for reconsideration, requesting correction of two aspects of the opinion. Specifically, the petitioners requested that this Court delete or otherwise clarify the reference to the circuit court having found in favor of Harry on the unjust enrichment and wage payment claims, as that was an incorrect statement because they (the petitioners) had prevailed on the claims. The petitioners advised that, other than with respect to Harry's request for a declaratory judgment as to the existence of a partnership, they had prevailed in the circuit court on all of the claims brought by Harry, namely, claims for fraud, constructive fraud, gross negligence, breach of contract, unjust enrichment, and violation of the wage payment statute. The petitioners pointed out that Harry did not cross-appeal or file a cross-petition for a writ of *certiorari* as to the circuit court's rulings against him with respect to the other six claims and asserted that the circuit court's rulings on the claims were final. In addition to seeking correction of the misstatement of fact concerning the unjust enrichment and wage payment claims, the petitioners requested that this Court amend the mandate to state "that the Court of Special Appeals is instructed to reverse the entire judgment of the Circuit Court for Baltimore County and to direct the Circuit Court for Baltimore County to dismiss all claims against all Defendants."[6]

Harry filed a motion for reconsideration too, seeking that this Court reconsider its determination that there was a lack of evidence of the intent to form a partnership.

---

[6]In addition, MAS, Mark, and Joel requested that the citation to Md. Code Ann., Corps. & Ass'ns (1992, 2014 Repl. Vol.) § 4A-202(a) in one location in the slip opinion be changed to Md. Code Ann., Corps. & Ass'ns (1992, 2014 Repl. Vol.) § 9A-202(a) for accuracy, which request we granted.

On September 30, 2019, this Court issued an order denying Harry's motion for reconsideration and granting in part and denying in part the motion for reconsideration filed by MAS, Mark, and Joel.  Specifically, this Court granted the petitioners' motion for reconsideration by deleting in its entirety the sentence from the opinion that had stated that "[t]he court also found in favor of Harry on the unjust enrichment and wage payment claims."[7]  We declined, however, to change the mandate.

## Proceedings on Remand

In accordance with the unchanged mandate, on October 11, 2019, the Court of Special Appeals issued the following Order:

> Pursuant to the September 30, 2019 mandate of the Court of Appeals of Maryland, which reversed our September 21, 2018 judgment finding that there was a partnership, it is this 11th day of October, 2019, by the Court of Special Appeals,
>
> ORDERED that the September 21, 2018 mandate of this Court is vacated; and it is further
>
> ORDERED that the judgment of the Circuit Court for Baltimore County is reversed, and the case is remanded to that court for further proceedings consistent with the opinion of the Court of Appeals.

On remand, on November 13, 2019, MAS, Mark, and Joel (the defendants) filed in the circuit court a motion to enter judgment, requesting that, to the extent that it had not already been done, judgment be entered on the docket in their favor on all seven counts of the complaint brought by Harry.  The defendants pointed out that, at the close of Harry's

---

[7]We also deleted the clause "including an unjust enrichment and wage payment claim" from the first sentence under the "Procedural Posture" section of the opinion so that the sentence reads only: "In his complaint, Harry raised multiple claims."

- 16 -

case, the circuit court dismissed the first three counts brought by Harry (fraud, constructive fraud, and gross negligence claims) and that, at the close of all of the evidence, the circuit court entered judgment in favor of the defendants and against Harry on three other counts (breach of contract, unjust enrichment, and wage payment and collection claims). According to the defendants, the only surviving count was Harry's declaratory judgment claim alleging the existence of a partnership.

The defendants explained that Harry did not file an appeal or cross-appeal regarding any of the judgments entered against him as to the other six counts, meaning that the six counts "were conclusively resolved and permanently extinguished by operation of law" and that the judgments on those counts were not before either the Court of Special Appeals or this Court and were not open for reconsideration on remand.

Harry filed a response to the motion, arguing that this Court found that he had loaned $275,000 as a creditor and earned commissions as an employee, not a partner, and that this Court reversed the circuit court's judgment and remanded the case with instructions to adjust the damages award consistent with the opinion. Harry found significant that in ruling on the motion for reconsideration this Court had rejected the request to dismiss all of the claims and left the instruction to the circuit court "as originally mandated." According to Harry, the circuit court was required to "adjust the damage award so that [he was] adequately compensated for his unpaid loan and commissions." Harry asserted that the notice of appeal filed by the defendants simply noted an appeal "without limitation and put at issue each and every interlocutory order that constituted the final judgment, not just the decision in favor of [Harry] on the" declaratory judgment count.

On December 16, 2019, the circuit court held a hearing on the motion to enter judgment. After hearing argument from the parties, the circuit court denied the motion, ruling from the bench in pertinent part as follows:

> In its opinion, the Court of Appeals said the trial court erred as a matter of law . . . when it classified Harry's $275,000 in payments to Sara Lee as capital contributions as opposed to loans nor can the wages the parties receive be considered profits here.
>
> Payments classified as wages are not supportive of partnership. For these reasons and even re[vie]wed in the light most favorable to Harry, the record lacks the necessary competent material evidence to conclude that the parties intended to form a partnership.
>
> Therefore, we hold that the trial [c]ourt's findings to the contrary was clearly erroneous and reverse and remand to the Court of Special Appeals with instructions to remand to the Circuit Court for Baltimore County to adjust the damage award in a matter [sic] -- in a matter [sic] consistent -- let me read that again -- in a matter [sic] consistent with this opinion.
>
> The parties each filed motions for reconsideration of the opinion, including the Defendants' request of the Court to amend its mandate so that the Court of Special Appeals is instructed to reverse the entire judgment of the Circuit Court for Baltimore County and to direct the Circuit Court for Baltimore County to dismiss all claims against all Defendants. The Court of Appeals opted not to do that.
>
> The case law requires me to take the mandate and the entire opinion and read them consistently in an attempt to determine what it is the Court of Appeals wants me to do.
>
> I have read the Court of Appeals'[s] decision countless times in an attempt to determine what the Court of Appeals wants me to do in this case. And I cannot come to any conclusion, other than to consider [Harry]'s claims for repayment of loan and wages.
>
> I am, therefore, denying the Defendants' Motion to enter Judgment. I am instructing the parties that they will -- I'm not having a new trial. I am not doing it. . . . I would like you all to brief the issue as to what, if any, effect -- when, if any, amount is owed by Sara[l]ee to [Harry] as a result of the loan, the terms of that loan that are in the record, as well as whatever facts support

- 18 -

a wage claim that are in the record.

In response to questions from the defendants' counsel seeking clarification of the ruling, the circuit court stated that it was reopening the unjust enrichment and wage claims "[f]or purposes of briefing" because it believed "that's what the Court of Appeals [was] requiring [it] to do." The circuit court advised that it would "entertain the repayment of the loan based upon the unjust enrichment and wage claim" and that the claims were "only open for purposes of determining damages[.]" In response to a question from Harry's counsel noting that the loan from Harry was to Saralee and asking whether the briefing on the unjust enrichment claim and the loan should be as to all defendants or just Saralee, the circuit court responded that the briefing would be "limited to" Saralee because "I only know what they are telling me to do or what I think they are telling me to do." The circuit court was apparently referring to what it believed to be an instruction from this Court.

On December 20, 2019, the circuit court issued a hearing notice, scheduling a hearing on Harry's "Claim for Damages" for June 17, 2020. On the same day, the circuit court issued a scheduling order setting forth the briefing schedule.

On January 17, 2020, MAS, Mark, Saralee, Wax Properties, and Joel filed in this Court a petition for a writ of mandamus and/or writ of prohibition, requesting that this Court issue a writ of mandamus or prohibition ordering the circuit court judge to void the December 16, 2019 oral ruling and accompanying order and to immediately halt the proceedings initiated in the circuit court on remand. The petitioners requested that this Court order the circuit court judge to enter judgment in their favor on the partnership count and to close the case with no damages being assessed against them. The petitioners

contended that a writ of mandamus and/or writ of prohibition was necessary because the circuit court exceeded its authority and was without jurisdiction to reopen the two counts (the unjust enrichment and wage payment claims) that had been finally adjudicated in their favor five years earlier and that Harry had never appealed or otherwise challenged. In addition, the petitioners argued that a writ of mandamus or prohibition was necessary because the circuit court lacked jurisdiction to enter judgment against a former party (Saralee) who had judgment granted in her favor after trial on all counts and who had not been a party to the case for nearly five years at that point, *i.e.*, Saralee had not been a party to the case on appeal to the Court of Special Appeals or before this Court. The circuit court judge filed an answer to the petition. Harry filed a motion to intervene and an answer to the petition.

The petitioners filed in the circuit court a motion to stay the proceedings, requesting that the circuit court stay proceedings in the case pending a decision by this Court on the petition for a writ of mandamus and/or prohibition. Harry filed a response, arguing that the motion to stay should be denied. The petitioners also filed in this Court a motion to stay the circuit court proceedings pending resolution of the mandamus action, and the circuit court judge filed a response in opposition. On March 27, 2020, this Court issued an order denying the petition for a writ of mandamus and denying Harry's motion to intervene and the petitioners' motion to stay as moot.

The remand proceedings continued in the circuit court. On February 18, 2020, Harry had filed in the circuit court a brief in support of damages. Harry contended that he was "entitled to his wages along with prejudgment interest at 6% per year from the date of

his termination – March 11, 2011 – plus treble damages, and attorney's fees" and that, as to the loans, he was "entitled to the principal – $275,000 – along with pre[]judgment interest at 6% per year from the date each of the two loans were made."  MAS, Mark, and Joel filed an opposition to Harry's brief in support of damages, arguing that Harry had no legal ground for seeking damages against them.  On May 19, 2020, the circuit court issued a "Memorandum Ruling," which stated, in relevant part, that the only remaining count to be resolved was a declaratory judgment count under the Maryland Uniform Declaratory Judgments Act ("the MUDJA")[8]:

> After review and consideration of Plaintiff's Brief in Support of Damages, Defendants' Opposition, and the Opinion and Mandate issued by the Court of Appeals in the foregoing matter, this Court holds that the only remaining count to be resolved is Plaintiff's claim under the Maryland Declaratory Judgment Act ("MDJA").  Since Plaintiff did not file a cross appeal for the dismissals of the unjust enrichment and wage payment claims, they cannot be relitigated.  *See Taylor v. Wahby*, 271 Md. 101, 110 (1974) ("[A] judgment or decree from which no appeal has been taken may not be reversed for the benefit of one who did not appeal even though in regard to him the judgment or decree was both erroneous and injurious.").  Furthermore, the Opinion and Mandate did not reopen those claims.  Therefore, the only surviving claims asserted by Plaintiff are those contained in Count 6 of the Complaint (Declaratory Judgment).

> Thus, the relevant and dispositive issues to be addressed are as follows:

> (1) Whether this Court has discretion and authority, under the MDJA, to grant Plaintiff, a former employee of MAS Association, LLC[], monetary relief for any wrongfully withheld wages;

> (2) Whether this Court has discretion and authority, under the

---

[8]The circuit court referred to the Act as the "Maryland Declaratory Judgment Act ('MDJA')."  The correct name of the Act is the Maryland Uniform Declaratory Judgments Act.  See Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) §§ 3-401 to 3-415.

MDJA, to grant Plaintiff monetary relief based on the grounds of unjust enrichment;

(3) Whether the MDJA permits this Court to recognize Plaintiff as a creditor, and if so, whether this Court has personal jurisdiction over the alleged debtor such that this Court has discretion and authority to grant monetary relief; and

(4) If the answer to any of the above issues is in the affirmative, is there enough evidence to support such a finding, and what, if any, are the damages to be awarded?[9]

(First alteration in original). The circuit court ordered the parties to submit memoranda on the issues and ordered that a remote hearing be held on August 5, 2020.

On May 22, 2020, the circuit court issued an amended order, reaffirming the content of the May 19, 2020 Order but expanding the issues to include the following: "Whether, pursuant to the only remaining count in this matter, this Court has personal jurisdiction over Saralee Greenberg such that, if warranted, a judgment of damages may be entered against her[.]" (Italics omitted).

Harry filed a brief in response to the memorandum ruling and amended order, requesting that the circuit court adjust the damage award to include $275,000 plus prejudgment interest from the date the loans were made and the full amount of unpaid commissions and profit plus treble damages and attorney's fees. The defendants filed an opposition, contending that the circuit court did not have authority to award damages to

---

[9]The declaratory judgment claim brought by Harry in the complaint sought partnership damages under the Maryland Revised Uniform Partnership Act, not the MUDJA. The applicability of the MUDJA appears to have been raised by the circuit court *sua sponte*. No issue as to the MUDJA had been raised by the parties at any prior time, and this Court did not address any issue as to the MUDJA in MAS Assocs.

Harry under the MUDJA. The defendants pointed out that Harry never brought a claim under the MUDJA in his complaint but instead pled a limited declaratory action under the Maryland Revised Uniform Partnership Act, *i.e.*, not a declaratory judgment action under the MUDJA. In addition, the defendants explained that the circuit court had no personal jurisdiction over Saralee, as she had been dismissed as a party by the court in 2015 and was not a party to any of the proceedings on appeal.

On August 5, 2020, the circuit court conducted a remote hearing on the matter. On November 6, 2020, the circuit court issued an opinion and order, ruling that the earlier rulings in favor of the defendants on the unjust enrichment and wage claims were "no longer consistent with the law of this case" and stating that, in accordance with this Court's "opinion and the findings of law therein, the judgments entered on March 3, 2015 are now reversed as to" the unjust enrichment and wage payment claims.

The circuit court vacated the judgments as to the unjust enrichment and wage payment claims. The circuit court entered judgment in favor of Harry against Saralee, who had not participated in any of the appellate proceedings, and MAS, jointly and severally, on the unjust enrichment claim "in the principal amount of $275,000.00, plus prejudgment interest in the amount of $159,304.20 through November 5, 2020, plus $45.21 per day until judgment is entered." The circuit court entered judgment in favor of Harry against MAS on the wage payment claim "in the amount of $90,292.62, plus prejudgment interest in the amount of $48,169.63 through November 5, 2020, plus $14.84 per day until judgment is entered." In total, the circuit court entered judgment in favor of Harry in the amount of $572,766.83. The circuit court entered judgment in favor of the defendants against Harry

- 23 -

on count six, the declaratory judgment claim.[10]  The following day, November 6, 2020, notices of recorded judgments against MAS and Saralee and in favor of Harry were issued.

On November 30, 2020, MAS and Saralee, Petitioners in this case, noted an appeal to the Court of Special Appeals.  On December 9, 2020, Harry noted an appeal to the Court of Special Appeals.

On December 11, 2020, MAS and Saralee filed in this Court a petition for a writ of *certiorari*, raising the following issue:

> Did the trial court exceed this Court's decision and Mandate in *MAS Assocs.* by (1) entering judgment on two counts -- unjust enrichment and wage payment -- that were never appealed after the 2015 trial and were the subject of a final, enrolled judgment; and (2) entering judgment against a former party who was beyond the trial court's jurisdiction?

On December 29, 2020, Harry filed in this Court a conditional cross-petition for a writ of *certiorari*, raising the following three issues:

> 1. In adjusting damages awarded under the Maryland Wage and Collection Law, did the trial court abuse its discretion in finding no bona fide dispute and awarding no attorney's fees or treble damages?
>
> 2. In adjusting damages awarded under unjust enrichment, [did] the trial court abuse its discretion in calculating prejudgment interest from the date of [Harry]'s resignation rather than the date he made the loan?
>
> 3. Did the trial court err[] by not declaring judgment or adjusting damages under the Revised Uniform Partnership Act or the Maryland Declaratory Judgment Act?

---

[10]In ordering that the judgments entered with respect to the unjust enrichment and wage payment counts were vacated and in awarding damages to Harry on those counts, the circuit court acknowledged that this Court reversed the award of damages to Harry under the Maryland Revised Uniform Partnership Act, Md. Code Ann., Corps. & Ass'ns (1975, 2014 Repl. Vol.) §§ 9A-101 to 9A-1305.  In so ruling, the circuit court recognized that Harry did not bring a claim under the MUDJA and contradicted its earlier determination that the unjust enrichment and wage payment claims could not be reopened.

On January 6, 2021, MAS and Saralee filed a motion to dismiss the conditional cross-petition. On February 8, 2021, this Court denied the motion to dismiss and granted the petition and conditional cross-petition. See MAS Assocs., 472 Md. 313, 245 A.3d 992.

Ten days later, on February 18, 2021, the circuit court issued an opinion and order that minimally adjusted the prejudgment interest amount of the November 6, 2020 judgments. On February 19, 2021, the Clerk's Office of the circuit court issued notices of modification of judgment indicating that the judgments entered on November 6, 2020 had been vacated.[11] On the same day, new notices of recorded judgments were issued. The only difference between the November 6, 2020 judgments and the February 19, 2021 judgments is that the amount of prejudgment interest awarded is slightly reduced. With respect to the judgment in favor of Harry against Saralee and MAS, jointly and severally, on the unjust enrichment claim, the prejudgment interest amount of $159,304.20 was reduced to $159,258 (a reduction of $46.20) and with respect to the judgment in favor of Harry against MAS on the wage payment claim, the prejudgment interest amount of $48,169.63 was reduced to "$48,154.4553" (a reduction of approximately $15.17).

On February 23, 2021, MAS and Saralee noted an appeal to the Court of Special

---

[11]Prior to the circuit court issuing notices vacating the judgments entered on November 6, 2020, Petitioners had noted an appeal and filed a petition for a writ of *certiorari* and Harry had noted an appeal and filed a conditional cross-petition with respect to the November 6, 2020 judgments. This Court granted the petition and conditional cross-petition and the matter is now before us in Case No. 54. Although the notices of modification of judgment from the Clerk's Office indicate that the judgments ordered on November 6, 2020 were vacated, neither party has indicated or requested that we treat Case No. 54 as moot.

Appeals as to the judgments docketed on February 19, 2021. On February 25, 2021, Harry noted an appeal to the Court of Special Appeals.

On February 26, 2021, MAS and Saralee filed in this Court a second petition for a writ of *certiorari* and a request to consolidate appeals, raising the same issue as in the earlier petition. On March 12, 2021, Harry filed in this Court a conditional cross-petition for a writ of *certiorari*, raising the same issues as in the earlier conditional cross-petition. On March 26, 2021, this Court granted the petition and conditional cross-petition and ordered that the case be set for argument on the same day as the earlier granted petition and conditional cross-petition. See MAS Assocs., LLC v. Korotki, ___ Md. ___, ___ A.3d ___, 2021 WL 1257085 (Md. Mar. 26, 2021).

## DISCUSSION[12]

### The Parties' Contentions

MAS and Saralee contend that the circuit court "[g]rossly [m]isinterpreted" this Court's opinion and mandate in MAS Assocs. by reopening the unjust enrichment and wage payment claims. MAS and Saralee point out that because Harry lost on six counts of the complaint (including the unjust enrichment and wage payment claims) at trial in 2015 and did not appeal the circuit court's determinations and lost the only other count of the complaint (the partnership count) before this Court, there were no counts left to litigate on remand. MAS and Saralee argue that this Court's instruction to "adjust the damage award"

---

[12]Because we hold that the circuit court erred by entering judgment in favor of, and awarding damages to, Harry on the unjust enrichment and wage payment claims, we do not reach the three issues raised by Harry in the conditional cross-petitions concerning an adjustment of the damages award.

could only have referred to damages that were entered on the partnership count at the trial, as those were the only damages entered after the trial, and the instruction could only have meant, in light of the reversal of the judgment in Harry's favor, to reduce the damages to zero. MAS and Saralee contend that the circuit court lacked the authority to reopen final enrolled judgments entered after trial and revive two counts of the complaint when the judgments with respect to the counts were never appealed or cross-appealed. MAS and Saralee point out that, at trial, the circuit court had granted judgment in favor of Saralee on all counts against her and that Saralee was not a party to the appeal or the proceedings before this Court. As such, MAS and Saralee argue that the circuit court exceeded this Court's mandate by entering judgment against a former party (Saralee) over whom it no longer had jurisdiction. Finally, MAS and Saralee contend that the remand proceedings conducted by the circuit court were unjust and fundamentally unfair.

Harry responds that the entry of judgment in March 2015, awarding him over $1 million and interest at a rate of 10% per annum from March 10, 2011 to the date payment is made, was the only final appealable judgment in the case. Harry contends that "[t]his Court's decision with regard to the counts based upon unjust enrichment and wage payment were interlocutory orders, not final judgments" and, as such, "no cross-appeal was necessary or appropriate." In addition, Harry maintains that Maryland Rule 8-131 "explicitly authorizes this Court to consider whatever issues it deems necessary[.]" Harry argues that, in MAS Assocs., this Court reversed the entire judgment in the case and "[n]o part" of the circuit court's "judgment was affirmed, including the part of the judgment dismissing the counts for breach of contract, unjust enrichment, and wage payment." Harry

argues that this Court and the circuit court have jurisdiction over every party involved in the case, including Saralee, and that Saralee was identified as a defendant, served with process, and continues to be actively involved in the case.

**Standard of Review**

Where actions do not involve a trial by jury, under Maryland Rule 8-131(c), "the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous[.]" In addition, as we stated in MAS Assocs., 465 Md. at 475, 214 A.3d at 1086, "[w]hen a trial court decides legal questions or makes legal conclusions based on its factual findings, we review these determinations without deference to the trial court." (Citation omitted). "Where a case involves the application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." Id. at 475, 214 A.3d at 1086 (cleaned up).

**Appeal and Cross-Appeal**

Pursuant to Maryland Rule 8-201(a), except as provided in Maryland Rule 8-204 (concerning applications for leave to appeal to the Court of Special Appeals), "the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in [Maryland] Rule 8-202." Maryland Rule 8-202(e) provides that, "[i]f one party files a timely notice of appeal, any other party may file a notice of appeal within ten days after the date on which the first notice of appeal was filed or within any longer time otherwise allowed by this Rule."

In Paolino v. McCormick & Co., 314 Md. 575, 579, 552 A.2d 868, 870 (1989), we

discussed principles applicable to appeals and cross-appeals:

> [A]n appeal or cross appeal is impermissible from a judgment wholly in a party's favor. In that situation, however, despite a party's inability to raise adverse issues by appeal or cross appeal, if the losing party appeals, the winning party may argue as a ground for affirmance matters resolved against it at trial. As [this Court] explained . . . where a party has an issue resolved adversely in the trial court, but receives a wholly favorable judgment on another ground, that party may, as an appellee, argue as a ground for affirmance the matter that was resolved against it at trial. This is merely an aspect of the principle that an appellate court may affirm a trial court's decision on any ground adequately shown by the record. But one who seeks to attack, modify, reverse, or amend a judgment (as opposed to seeking to affirm it on a ground different from that relied on by the trial court) is required to appeal or cross appeal from that judgment.

(Cleaned up).

In Taylor v. Wahby, 271 Md. 101, 103-05, 109, 314 A.2d 100, 101-02, 104 (1974), a consolidated case involving disputes over the amount of damages to be paid for real estate commissions, where one of the appellees, Wahby, failed to prosecute a cross-appeal of the trial court's original awards of damages in the amount of $1.00 in his favor against individual defendants, this Court held that Wahby could not receive the benefit of an opinion indicating that the amount of the damages awards against the individual defendants should be higher. Wahby, a real estate broker, had contended that he was the procuring cause for the sales of two properties (apartment buildings) and brought an action in the Circuit Court for Montgomery County seeking to recover real estate commissions. See id. at 103, 314 A.2d at 101. A different real estate broker, a company, also contended it that was the procuring cause for the sales of the same properties and likewise sued. See id. at 103, 314 A.2d at 101. The actions were consolidated for trial. See id. at 103, 314 A.2d at 101.

- 29 -

After trial, the circuit court determined that Wahby was the procuring cause for the sale of one of the properties and that the other real estate broker was the procuring cause for the sale of the other property. See id. at 103-04, 314 A.2d at 101-02. Among other determinations, the circuit court awarded Wahby compensatory damages in the amount of $47,500 against the corporation that owned one of the properties and its president for the real estate commission and in the amount of $1.00 against the corporation president and two other individuals for tortious interference and conspiracy to defraud Wahby of the real estate commission. See id. at 103-04, 314 A.2d at 101-02. The circuit court also awarded the other real estate broker damages for the real estate commission for the sale of the other property, tortious interference, and conspiracy to defraud. See id. at 104, 314 A.2d at 102. The defendants appealed. See id. at 104, 314 A.2d at 102. The other real estate broker filed and prosecuted a cross-appeal. See id. at 104, 314 A.2d at 102. Wahby filed, but failed to prosecute, a cross-appeal. See id. at 104, 314 A.2d at 102.

On appeal, this Court remanded the cases without affirming or reversing with instructions to "vacate all the judgments, except those against" the corporations that owned the properties, and to enter new judgments that would "reflect the collectibility of the judgments against the corporations, perhaps by being entered for the amount of the commissions claimed with credit to be given for any amount recovered on the judgments against the corporations[.]" Id. at 105, 314 A.2d at 102. Prior to the issuance of the mandate, the individual defendants requested reargument, contending that the effect of this Court's decision in Wahby's case would be to increase the damages awards against the individual defendants from $1.00 to $47,500 and that this could not be done because

- 30 -

Wahby had not prosecuted his cross-appeal of the damages awards of $1.00 with respect to the individual defendants. See id. at 105-06, 314 A.2d at 102-03. This Court denied the motion for reargument. See id. at 106, 314 A.2d at 103.

On remand, in Wahby's case, the circuit court entered new judgments against the individual defendants jointly and severally in the amount of $84,040.04, representing the amount of the real estate commission, interest, attorneys' fees, and expenses (costs). See id. at 106-07, 314 A.2d at 103. The individual defendants appealed. See id. at 108, 314 A.2d at 103. On appeal, this Court reversed the new judgments and stated that "although the $1.00 judgments were considered by us, they were not subject to change or consideration by us for Wahby's benefit since he did not" prosecute his cross-appeal. Id. at 117, 109, 314 A.2d at 108, 104. Quoting Walston v. Sun Cab Co., 267 Md. 559, 564, 298 A.2d 391, 394 (1973), this Court stated:

> We have held many times that an appellee who does not file a cross-appeal cannot urge before us matters not within or related to the issues raised by an appellant. Even if a judgment or decree is prejudicial to an appellee, such prejudice will be disregarded by this Court if there was no cross-appeal filed by the appellee. Moreover, such appellee cannot obtain any affirmative relief by way of reversal, amendment or modification of the judgment or decree under review in this Court.

Taylor, 271 Md. at 109, 314 A.2d at 104 (internal quotation mark omitted).

Similarly, in Kunda v. Morse, 229 Md. App. 295, 302 & n.4, 145 A.3d 51, 55 & n.4 (2016), a breach of contract case, the Court of Special Appeals's discussion of issues before it on appeal demonstrated the necessity of filing a timely cross-appeal. In Kunda, id. at 299, 145 A.3d at 53, the appellant (seller) entered into a contract with the appellees (buyers) for the sale and transfer of a store (a corporation) and associated real property. The

appellant agreed to finance a portion of the sale price, but difficulties arose and the appellees filed a complaint alleging several counts of breach of contract against the appellant and the corporation. See id. at 299-300, 145 A.3d at 53-54. The alleged breaches stemmed from the appellant's purported failure to return money paid for the store's stock, prevention of the appellees from completing the purchase of the store, and failure to disclose the illegality of slot machines in the store. See id. at 300, 145 A.3d at 54. Following a bench trial, the trial court found in the appellees' favor with respect to Count I (breach of contract) but against the appellees on Count III (deceit in connection with the non-disclosure of the illegality of the slot machines). See id. at 301-02 & n.4, 306, 145 A.3d at 54-55 & n.4, 57. The appellant noted an appeal and, in the Court of Special Appeals, argued that the appellees initially breached the contract (by not paying) and that the trial court erred in awarding the appellees damages with respect to Count I. See id. at 301-02, 306, 145 A.3d at 55, 57.

On appeal, the appellees generally contended that the evidence supported the trial court's determination that the appellant breached the contract first and also argued that the trial court erred in finding that they had not proven deceit with respect to the appellant's non-disclosure of the illegality of the slot machines. See id. at 302 & n.4, 145 A.3d at 55 & n.4. With respect to the contentions raised by the appellees, however, the Court of Special Appeals noted:

> The [appellees] additionally argue in their brief that the trial court erred in finding they could not prove their claim for deceit. They urge this Court to reverse the trial court because it failed to draw an adverse inference against [the appellant] when she asserted her Fifth Amendment privilege not to testify regarding the legality of the slot machines. This argument, however,

is not presented in response to the appellant's contentions regarding Count I of the complaint. It is presented to seek our review of the trial court's denial of Count III of the complaint. As such, it resembles less a counterargument and much more a cross-appeal. Maryland Rule 8-202(e) requires notice of a cross-appeal to be filed "within ten days after the date on which the first notice of appeal was filed or within any longer time otherwise allowed by this Rule." The record does not demonstrate that the [appellees] filed a notice of a cross-appeal in this case. Accordingly, "if a timely cross-appeal is not filed, we will ordinarily review only those issues properly raised by the appellant[.]" *Maxwell v. Ingerman*, 107 Md. App. 677, 681, 670 A.2d 959 (1996). Our review in this matter will be limited to those questions presented by the appellant in her brief, which are limited to a review of Count I of the complaint.

Kunda, 229 Md. App. at 302 n.4, 145 A.3d at 55 n.4 (last alteration in original). Thus, in the absence of a timely cross-appeal, the Court of Special Appeals did not consider any issue with respect to the trial court's finding on the count of the complaint concerning the appellant's alleged failure to disclose the illegality of the slot machines. See id. at 302 n.4, 145 A.3d at 55 n.4. Rather, the Court of Special Appeals held that the trial court correctly determined that the appellant had initially breached the agreement and that its award in favor of the appellees on Count I of the complaint was supported by the evidence. See id. at 306, 312, 145 A.3d at 57, 61.

### Final Judgment

At the time of the trial in this case, Maryland Rule 2-601 provided as follows:

**(a) Prompt entry—Separate document.** Each judgment shall be set forth on a separate document. Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule.

- 33 -

Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

**(b) Method of Entry—Date of Judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

**(c) Recording and Indexing.** Promptly after entry, the clerk shall (1) record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court and (2) note on the docket the date the clerk sent copies of the judgment in accordance with Rule 1-324.

Court of Appeals of Maryland, Rules Order at 4, 64-66 (Mar. 2, 2015), <u>available at</u> https://

www.courts.state.md.us/sites/default/files/rules/order/ro186supp.pdf     [https://perma.cc/

V9J7-TFCT]. <u>See also</u> <u>Hiob v. Progressive Am. Ins. Co.</u>, 440 Md. 466, 478, 103 A.3d 596,

603 (2014).[13]

With respect to what constitutes a final judgment subject to appeal, in <u>Popham v.</u>

<u>State Farm Mut. Ins. Co.</u>, 333 Md. 136, 142-43, 634 A.2d 28, 31 (1993), we stated:

A judgment is final if it is so far final as to determine and conclude the rights involved in the action, or to deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding. In other words, in addition to being intended as an unqualified, final disposition of the matter in controversy, the judgment must settle the rights of the parties, thereby concluding the cause of action. Of course, the clerk must make a proper record of the judgment in

---

[13]Currently, Maryland Rule 2-601(a) provides that a judgment must be set forth on a separate document and should include a statement of an allowance of costs, that the clerk must prepare, sign, and enter the judgment, and that the court shall review and sign the judgment. <u>See</u> Md. R. 2-601(a)(1)-(3). Maryland Rule 2-601(a)(4) provides that "[a] judgment is effective only when so set forth and when entered as provided in section (b) of this Rule." Under Maryland Rule 2-601(b)(2) and (3), the clerk shall enter a judgment by making an entry of it on the docket and, unless shielding is required, the docket entry and date of entry shall be made available to the public through CaseSearch on the Judiciary website.

accordance with Maryland Rule 2-601.

(Cleaned up). Recently, in LVNV Funding LLC v. Finch, 463 Md. 586, 607-08, 207 A.3d

202, 214 (2019), we discussed the importance of the finality of judgments, explaining:

> [T]he ability to challenge a civil judgment, other than by an appeal, is limited, even in the court that entered it. The court that rendered the judgment has discretionary revisory power over it for only 30 days. On the 30th day, the judgment becomes "enrolled," and after that time, the court may revise it only upon a finding of fraud, jurisdictional mistake, or irregularity, which are narrowly construed.

(Citations omitted). Indeed, "[e]nrolled judgments create important vested rights that not

just the parties, but the entire public, have a right to rely upon." Id. at 611, 207 A.3d at

216.

**Maryland Rule 8-131(b)(1)**

Appellate review in this Court may be obtained only in the manner prescribed in

Maryland Rule 8-301(a), including "by writ of certiorari upon petition filed pursuant to

Rules 8-302 and 8-303[.]" Md. R. 8-301(a)(3). Where there has been a prior appellate

decision rendered, Maryland Rule 8-131(b)(1) sets forth the scope of appellate review in

this Court as follows:

> Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals. Whenever an issue raised in a petition for certiorari or a cross-petition involves, either expressly or implicitly, the assertion that the trial court committed error, the Court of Appeals may consider whether the error was harmless or non-prejudicial even though the matter of harm or prejudice was not raised in the petition or in a cross-petition.

Under Maryland Rule 8-131(b)(1), where an issue is not raised by a party in a petition for

a writ of *certiorari* or a cross-petition, "the issue is not properly before this Court." Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc., 456 Md. 272, 299, 173 A.3d 549, 564 (2017) (citations omitted). Stated otherwise, "[u]nder our certiorari process, this Court will only consider matters on appeal raised in a petition for writ of certiorari that we have granted." Jones v. State, 357 Md. 408, 419, 745 A.2d 396, 401 (2000) (citation omitted).

Nonetheless, under Maryland Rule 8-131(b), "in our order granting certiorari, or in a later order having the effect of amending the order granting certiorari, we may either limit the issues or add issues which the parties have not presented in certiorari petitions or cross-petitions." Robinson v. Bunch, 367 Md. 432, 440, 788 A.2d 636, 641 (2002) (citations omitted). The use of the term "ordinarily" in Maryland Rule 8-131(b)(1) "implies that this Court possesses the discretion to consider issues that were not necessarily raised in the petition or order for a Writ of Certiorari." State v. Parker, 334 Md. 576, 597, 640 A.2d 1104, 1114 (1994) (citation omitted). Importantly, when we exercise our discretion under Maryland Rule 8-131(b)(1) to consider an issue not presented in a petition for a writ of *certiorari* or cross-petition, we generally state as much. See, e.g., id. at 596-97, 640 A.2d at 1114 ("Because of the public policy implications that arise from the government's failure to fulfill a material element of a plea agreement," an issue that the State contended was "not properly before this Court because it was raised in neither the State's petition for a writ of certiorari nor the order of this Court granting the writ[,]" "we shall exercise our discretion to consider this issue."); Gallagher v. Mercy Med. Ctr., Inc., 463 Md. 615, 634 n.10, 207 A.3d 634, 645 n.10 (2019) ("Petitioner raised [an] issue for the first time in her Reply brief. She did not raise it in her petition for a writ of *certiorari* or her initial brief.

- 36 -

Ordinarily, we 'will consider only an issue that has been raised in the petition for certiorari . . . and that has been preserved for [our] review.' Maryland Rule 8-131(b). We will, in this case, exercise our discretion to reach Petitioner's claim in the interest of the parties and judicial economy." (Ellipsis and second alteration in original)).

**Judgment and Mandate**

Maryland Rule 8-604(e), concerning entry of judgment, provides that, "[i]n reversing or modifying a judgment in whole or in part, the Court may enter an appropriate judgment directly or may order the lower court to do so." Maryland Rule 8-606(a) provides that "[a]ny disposition of an appeal . . . shall be evidenced by the mandate of the Court, which shall be certified by the Clerk under the seal of the Court and shall constitute the judgment of the Court." If "a mandate is ambiguous, one must look to the opinion and other surrounding circumstances to determine the intent of the court." Carpenter Realty Corp. v. Imbesi, 369 Md. 549, 561-62, 801 A.2d 1018, 1025 (2002) (cleaned up).

**Analysis**

Here, we hold that the circuit court's action on remand in reopening the claims of unjust enrichment and violation of the Maryland Wage Payment and Collection Law and awarding monetary judgments in favor of Harry was not consistent with the opinion and mandate issued by this Court. The two counts had been conclusively decided against Harry at trial and in favor of Petitioners and were not at issue on appeal in the Court of Special Appeals or on review before this Court. The circuit court's judgments against Harry with respect to the two counts were final. We conclude that because Harry never sought appellate review of the judgments either in the Court of Special Appeals through the filing

of an appeal or a cross-appeal or in this Court through the filing of a conditional cross-petition, the claims could not be reopened by the circuit court on remand and Harry could not receive the benefit of an opinion indicating that a partnership did not exist. In addition to the finality of the judgments and the circumstance that Harry failed to seek appellate review of the judgments, the circuit court lacked authority to take any action on remand with respect to Saralee, who had not been found liable on any count of the complaint and had not participated in any appellate proceedings. For these reasons, the circuit court erred on remand in entering judgments in favor of Harry against MAS and Saralee on the counts of unjust enrichment and violation of the Maryland Wage Payment and Collection Law. Accordingly, we reverse the judgments of the circuit court and remand to that court with instruction to vacate the judgments.

A review of the record demonstrates unequivocally that the circuit court's determinations with respect to the unjust enrichment and wage payment claims were not before this Court for appellate review and that, on remand, the circuit court fundamentally misinterpreted the opinion and mandate in MAS Assocs. Although Harry raised several claims in the complaint against the defendants, at the conclusion of the bench trial, the circuit court ruled in Harry's favor only as to the partnership claim, concluding that a partnership existed and awarding Harry monetary damages, and finding against him on all other counts. MAS, Mark, and Joel appealed the circuit court's decision to the Court of Special Appeals and sought review in this Court after the Court of Special Appeals affirmed the circuit court's judgment on the partnership count.

In MAS Assocs., 465 Md. at 462-63 & n.1, 214 A.3d at 1079 & n.1, the sole question

- 38 -

presented for review was whether competent material evidence existed in the record supporting the circuit court's finding that a partnership existed. We did not address the merits of, let alone reverse, vacate, or reopen, the circuit court's judgments with respect to the unjust enrichment and wage payment counts of the complaint as those judgments were not before the Court for consideration. Harry did not file in the circuit court a notice of cross-appeal as to the decisions against him concerning the unjust enrichment and wage payment claims or raise in the Court of Special Appeals any argument as to the two claims. In fact, in its opinion, the Court of Special Appeals did not mention that Harry had even brought such claims in the complaint. See MAS Assocs., 2018 WL 4575140, at *1-*15. Similarly in this Court, Harry did not seek review of the circuit court's adverse decisions on the unjust enrichment and wage payment claims by filing a conditional cross-petition for a writ of *certiorari* or even raise an argument in this Court concerning the possibility of having the two counts reopened. As such, the circuit court's judgments on the two claims were not before this Court to consider or take any action with respect to.

In discussing principles related to appeals and cross-appeals, in Paolino, 314 Md. at 579, 552 A.2d at 870, we stated that "one who seeks to attack, modify, reverse, or amend a judgment (as opposed to seeking to affirm it on a ground different from that relied on by the trial court) is required to appeal or cross appeal from that judgment." (Citations omitted). In Taylor, 271 Md. at 110, 314 A.2d at 104-05, we specifically explained that "a judgment or decree from which no appeal has been taken may not be reversed for the benefit of one who did not appeal even though in regard to him the judgment or decree was both erroneous and injurious." In Kunda, 229 Md. App. at 302 n.4, 145 A.3d at 55 n.4, the

Court of Special Appeals discussed the consequences of a party attempting to inject on appeal an argument about a matter that had been decided against the party by the trial court where the party failed to file a cross-appeal. The Court of Special Appeals explained that "[t]he record does not demonstrate that the [appellees] filed a notice of a cross-appeal in this case. Accordingly, if a timely cross-appeal is not filed, we will ordinarily review only those issues properly raised by the appellant." Id. at 302 n.4, 145 A.3d at 55 n.4 (cleaned up). Likewise, in this case, in the absence of a timely filed appeal or cross-appeal or cross-petition for a writ of *certiorari*, no issue as to the circuit court's rulings with respect to the unjust enrichment and wage payments claims was before the Court of Special Appeals or this Court for appellate review.

In this case, it is plain that this Court did not exercise its discretion pursuant to Maryland Rule 8-131(b)(1) to review the circuit court's judgments as to the unjust enrichment and wage payment claims. Case law and common sense indicate that when we exercise the discretion afforded under Maryland Rule 8-131(b)(1) to review a matter not raised in a petition for a writ of *certiorari* or cross-petition, we say as much. See, e.g., Parker, 334 Md. at 596-97, 640 A.2d at 1114. Although Harry contends that we exercised our discretion under Maryland Rule 8-131(b)(1) to take up matters not raised by a cross-petition for a writ of *certiorari*, our opinion does not state or even suggest that we did so.

To be sure, in the opinion, we stated that "both MAS and the parties treated their income as wages, not profits, in line with the written contemplations of the parties during their negotiations to become LLC members. Receipt of wages does not support a finding of partnership[,]" MAS Assocs., 465 Md. at 492, 214 A.3d at 1096, but this could in no

- 40 -

way be construed to be an exercise of discretion under Maryland Rule 8-131(b)(1) to review the circuit court's judgment on claims where Harry had not appealed or sought review in this Court, particularly given the circumstance that one of the defendants on the claims (Saralee) was not a party to the case before this Court. It could not realistically have been perceived that this Court, in an exercise of discretion under Maryland Rule 8-131(b)(1), ordered the unjust enrichment and wage payment claims to be reopened on remand and authorized further litigation on the counts without stating so in the opinion or mandate and without having given Saralee, or the other defendants for that matter, so much as notice or an opportunity to be heard on the issue of vacating the judgments and reopening the two claims.

Rather, our opinion addressed the sole question raised in the petition for a writ of *certiorari*, namely, whether the record consisted of competent material evidence conclusively demonstrating that the parties intended to form a partnership. We held that the record did not, and we reversed and remanded the case with instruction that the circuit court adjust the damage award in a manner consistent with our opinion. Our mandate specifically stated that the Court of Special Appeals's judgment was "reversed as to finding of partnership." Id. at 494, 214 A.3d at 1097 (bolding and capitalization omitted). In other words, the mandate made clear that the reversal pertained to the finding of the existence of a partnership and not to any other claim that had been raised in the circuit court. Nothing in this Court's opinion or mandate purported to reopen or revive the unjust enrichment and wage payment claims.

We are wholly unpersuaded by Harry's contentions that the appeal noted by the

defendants to the Court of Special Appeals raised for appellate review "all other orders in the case" and not just the circuit court's determination on the partnership claim, *i.e.*, that the circuit court's rulings on the unjust enrichment and wage payment claims were "interlocutory orders, not final judgments[,]" and no cross-appeal was necessary. (Cleaned up). Contrary to Harry's contention, the circuit court's rulings on the unjust enrichment and wage payment claims constituted final judgments just as much as the circuit court's ruling on the partnership claim did. On February 10, 2015, at the conclusion of the bench trial, the circuit court announced its decision on the merits of the unjust enrichment, wage payment, and partnership claims, ruling from the bench as follows:

> There will be -- judgment is entered in favor of the Defendants on Count 5, unjust enrichment, and Count 7, the wage payment claim. And again, as far as the declaratory judgment, judgment is entered in favor of the Plaintiff and against Mark Greenberg, Joel Wax and MAS Associates, LLC. Judgment will be entered.

(Paragraph breaks omitted).[14] The CaseSearch entries on the Judiciary website confirm that judgment was entered as to the unjust enrichment, wage payment, and partnership counts. A CaseSearch entry states that on February 10, 2015, among other things, the bench trial concluded and Counts 4, 5, and 7 were found in favor of the defendants and Count 6 was found in favor of Harry and against the defendants, Mark, Joel, and MAS, in the amount of $1,097,866. The entire entry concludes with "Judgment entered. Filed:

---

[14]In entering judgment in favor of Harry on the partnership count, the circuit court announced an award of damages in the amount of "$1,970,866" (sic). The transcript indicates that the circuit court stated that "[t]he total amount" of the judgment "is $1,970,866." All other entries and documents associated with the case indicate the total amount of the monetary judgment was $1,097,866.

02/10/2015[.]" The relevant CaseSearch entry as it appears on Judiciary website is as

follows:

File Date: 02/10/2015
Filed By:
Document Name: Hearing Sheet
Comment: Motion: 74 Sequence: 0 Create Initials: HS Create Date: 02/20/2015 Update Initials: HS Update Date: 03/02/2015 DOCP - Open Court Proceeding February 10, 2015. Hon Justin J King. Bench trial resumed. Bench trial concluded. Counts 1, 2, and 3 previously dismissed. Counts 4, 5, and 7 found in favor of the defendants Mark Greenberg, Joel Wax, and MAS Associates LLC. Count 6 found in favor of the plaintiff Harry Korotki and against the defendants Mark Greenberg, Joel Wax, and MAS Associates LLC in the amount of $1,097866 [sic] (principle [sic] amount $793,000 + pre-judgment interest in the amount of $260,712 + earned commission in the amount of $44,154) plus interest and costs. Judgment entered. Filed: 02/10/2015

Consistent with the CaseSearch entry, a docket entry in the case on the Maryland

Electronic Courts ("MDEC") case management system shows that judgment was entered

on February 10, 2015 as follows:

Motion: 74
Sequence: 0
Create Initials: HS
Create Date: 02/20/2015
Update Initials: HS
Update Date: 03/02/2015
DOCP - Open Court Proceeding
February 10, 2015. Hon Justin J King. Bench trial resumed. Bench trial concluded. Counts 1, 2, and 3 previously dismissed. Counts 4, 5, and 7 found in favor of the defendants Mark Greenberg, Joel Wax, and MAS Associates LLC. Count 6 found in favor of the plaintiff Harry Korotki and against the defendants Mark Greenberg, Joel Wax, and MAS Associates LLC in the amount of $1,097866 [sic] (principle [sic] amount $793,000 + pre-judgment

- 43 -

interest in the amount of $260,712 + earned commission in the amount of $44,154) plus interest and costs. Judgment entered.
Filed: 02/10/2015

In addition, on February 20, 2015, the defendants filed a motion to alter, amend, or revise the judgment, seeking clarification as to the circuit court's ruling on the partnership claim. In the motion, the defendants expressly stated that the circuit court "entered judgment in favor of all Defendants, and against Plaintiff Harry Korotki, on the breach of contract (Count IV), unjust enrichment (Count V), and [Maryland Wage Payment and Collection Law] (Count VII) claims." Harry did not respond to the defendants' motion. On March 27, 2015, the circuit court denied the defendants' motion without commenting on the statement that the court had entered judgment in favor of all defendants on the unjust enrichment and wage payment claims and noted that Harry had not responded to the motion.[15]

---

[15]On March 13, 2015, Harry filed a motion to alter or amend the judgment with respect to the partnership claim, seeking to increase the total amount of the judgment to $1,153,050. On March 23, 2015, the circuit court granted Harry's motion, in part, by altering the judgment to award Harry interest on the base amount of $793,000 at the rate of 10% per annum from March 10, 2011 to the date payment is made, *i.e.*, the circuit court accounted for post-judgment interest. The circuit court ordered that the remainder of the judgment would not be altered; hence, the amount of $1,097,866 was not affected. On March 27, 2015, the Clerk's Office issued a notice of modification of judgment leaving the total amount of the judgment at $1,097,866 as ordered by the circuit court on February 10, 2015 and awarding Harry "interest on the $793,000 at the rate of 10% per annum from 3/10/11 to the date payment is made[.]"

The CaseSearch entries on the Judiciary website reflect the judgment entered on February 10, 2015 and also have separate entries documenting the monetary judgment. Under a section entitled "Judgment Information" of the CaseSearch entries, the details of the original monetary judgment and modified monetary judgment are set forth. The original monetary judgment issued on February 10, 2015 is described as being entered on March 3, 2015. The modified monetary judgment is described as being entered on March

In discussing what constitutes a final judgment, this Court has explained that to be a final judgment, a ruling must have the following three attributes:

> (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to M[aryland] Rule 2-602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with M[aryland] Rule 2-601.

Smith v. Lead Indus. Ass'n, Inc., 386 Md. 12, 21, 871 A.2d 545, 550 (2005) (cleaned up). It is immediately clear that the circuit court's ruling on February 10, 2015 with respect to the unjust enrichment and wage payment claims satisfies two of the three attributes. That the ruling was intended by the circuit court as an unqualified, final disposition of the case is obvious. Significantly, the circuit court announced that it was entering "judgment" as to the unjust enrichment, wage payment, and partnership claims and emphasized that judgment would be entered on those claims. The circuit court's ruling on February 10, 2015 came at the conclusion of the bench trial, and with the ruling, all of the claims brought by Harry had been adjudicated by the court. There were no further proceedings left to be had and nothing left to resolve with respect to the complaint.

To the extent that Harry's argument is that the award of monetary damages on the

---

27, 2015. In addition, the CaseSearch entries reflect that the original monetary judgment and modified monetary judgment were indexed and notices of the recorded judgments were issued on the respective entry dates. After the February 10, 2015 ruling, there was no modification of the original judgment in favor of the defendants on the unjust enrichment and wage payment claims. And, at the time of the trial in this case, Maryland Rule 2-601(c) provided that the clerk shall "record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court[.]" Thus, there were no further entries on CaseSearch with respect to the judgments against Harry on the unjust enrichment and wage payment claims.

partnership claim is the only final judgment in the case because there may not be a written document memorializing the judgments in favor of the defendants on the unjust enrichment and wage payment claims, this contention is not persuasive. To be sure, both the version of Maryland Rule 2-601(a) in effect at the time of the trial and the current version require that a judgment be set forth on a separate document, but the requirement is not absolute. In Wireless One, Inc. v. Mayor & City Council of Balt., 465 Md. 588, 599 n.2, 214 A.3d 1152, 1158 n.2 (2019), quoting the Court of Special Appeals in that case, we noted:

> [T]he separate document requirement is not jurisdictional, and strict compliance may be waived where a technical application of the separate document requirement would only result in unnecessary delay. The Court of Appeals has held that strict compliance with the separate document rule can be waived, at least where the trial court intended the docket entries made by the court clerk to be a final judgment and where no party objected to the absence of a separate document after the appeal was noted.

(Citation omitted).

We are mindful that this Court has been reticent or unwilling to find a waiver of the separate document requirement where such a finding would preclude an appeal. In URS Corp. v. Fort Myer Constr. Corp., 452 Md. 48, 67, 156 A.3d 753, 764 (2017), we stated that "[t]here are certain circumstances[] when the separate document requirement may be waived in order to *preserve* an appeal, rather than eliminate it as untimely." (Emphasis in original). In URS Corp., id. at 67, 156 A.3d at 764, we explained that if the trial court has not complied with the separate document requirement, a litigant's appeal cannot be considered late. The concern expressed in URS Corp. does not exist here.

In this case, the waiver of the separate document rule in determining the finality of a judgment does not involve preserving or eliminating an appeal. The time for Harry to

- 46 -

note an appeal or cross-appeal has long passed. The question is whether the circuit court's February 10, 2015 ruling was a final judgment from which Harry could have filed an appeal or cross-appeal at the time. The answer is plainly yes. The circuit court intended the ruling to be a final judgment and no party objected to the lack of a separate document from the circuit court. The record is devoid of any indication that Harry failed to appeal six years ago because he believed the circuit court's rulings on the unjust enrichment and wage payment claims to be "interlocutory orders" and not final judgments. Rather, Harry would have been aware that: (1) the circuit court announced in open court that its rulings were judgments, (2) there were no more counts of the complaint left to adjudicate, (3) the defendants in their motion to alter and amend stated that the circuit court had entered judgment in their favor, and (4) the circuit court's entries on CaseSearch reflected that judgment had been entered. There is no question that the circuit court's rulings with respect to the unjust enrichment and wage payment claims were final judgments from which Harry could have noted an appeal or cross-appeal. In this case, the absence of a separate document recording the judgments does not prevent such a determination.

Prior to July 1, 2015, at the time of the circuit court's rulings in this case, Maryland Rule 2-601(b) provided:

> **Method of Entry—Date of Judgment.** The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

Court of Appeals of Maryland, Rules Order at 4, 65 (Mar. 2, 2015). See also Won Bok Lee v. Won Sun Lee, 466 Md. 601, 622, 223 A.3d 478, 490 (2020) (citations omitted). The

- 47 -

docket entries on the MDEC case management system clearly show that, on February 10, 2015, the court found in favor of the defendants on counts 4, 5, and 7 and in favor of Harry and against the defendants on count 6 and states "Judgment entered. Filed: 02/10/2015[.]" The docket entry includes the notations "Create Date: 02/20/2015" and "Update Date: 03/02/2015[.]" MDEC was implemented in Baltimore County on February 19, 2019. See Maryland Judiciary, *Baltimore County courts launch electronic case management system* (Feb. 22, 2019), available at https://www.courts.state.md.us/media/news/2019/ pr20190222 [https://perma.cc/9G55-X5CB]; Baltimore County Government, Electronic Filing and Document Viewing, https://www.baltimorecountymd.gov/departments/circuit/ library/mdec.html [https://perma.cc/5KZ5-R6J7]. As such, the docket entries currently reflected on MDEC were input by the Clerk's Office from documents that existed at the time of the trial.[16] The MDEC entry shows that, after trial, the Clerk's Office made a record of the judgment on the docket within the file as required by the version of Maryland Rule 2-601(b) that was in effect at the time. Undoubtedly, the circuit court's judgments on the unjust enrichment and wage payment claims were final, appealable judgments.[17]

---

[16]The court file of the Circuit Court for Baltimore County contains, among other docket entries in the case, a docket entry that was made on February 10, 2015, at the conclusion of the bench trial. The docket entry consists of the same information as the entry in MDEC, stating that the circuit court found in favor of the defendants on counts 4, 5, and 7 and in favor of Harry and against the defendants on count 6, and concludes with the words "Judgment entered."

[17]In addition to the judgments being final appealable judgments, at the time of the remand, the judgments had become enrolled. Just as Harry failed to file an appeal or cross-appeal with respect to the circuit court's judgments concerning the unjust enrichment and wage payment claims, Harry did not seek revision of the unfavorable judgments under either Maryland Rule 2-534 or Maryland Rule 2-535(a). Maryland Rule 2-534 provides:

- 48 -

Indeed, in its May 19, 2020 ruling, the circuit court initially recognized that the judgments as to the unjust enrichment and wage claim could not be reopened, stating:

> Since Plaintiff did not file a cross appeal for the dismissals of the unjust enrichment and wage payment claims, they cannot be relitigated. *See Taylor v. Wahby*, 271 Md. 101, 110 (1974) ("[A] judgment or decree from which no appeal has been taken may not be reversed for the benefit of one who did not appeal even though in regard to him the judgment or decree was both erroneous and injurious."). Furthermore, the [Court of Appeals's] Opinion and Mandate did not reopen those claims.

(First alteration in original). We agree. In light of the absence of an appeal or cross-appeal or cross-petition for a writ of *certiorari* by Harry concerning the unjust enrichment and

---

> In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial. A motion to alter or amend a judgment filed after the announcement or signing by the trial court of a judgment but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

Maryland Rule 2-535(a) provides in pertinent part: "On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2-534."

After the 30-day period set forth in Maryland Rule 2-535 expired, the circuit court's judgment as to the unjust enrichment and wage payment claims became an enrolled judgment, which, under Maryland Rule 2-535(b), could only be modified upon motion of a party and a finding of fraud, mistake, or irregularity by the circuit court. See LVNV Funding, 463 Md. at 607-08, 207 A.3d at 214. ("On the 30th day, the judgment becomes 'enrolled,' and after that time, the court may revise it only upon a finding of fraud, jurisdictional mistake, or irregularity, which are narrowly construed." (Citations omitted)). Absent such a finding, the circuit court had no independent authority to modify the judgments under Maryland Rule 2-535(b).

wage payment claims when we decided MAS Assocs., our instruction to adjust the damage award could only have had the effect of vacating the damages awarded to Harry on the partnership count, the only claim on which there had been an appeal and the only claim that was before us.

To be sure, after we issued the opinion and mandate in MAS Assocs., we denied a request in the motion for reconsideration to change the mandate. In the motion for reconsideration, among other things, Mark, Joel, and MAS asked that we instruct the Court of Special Appeals "to reverse the entire judgment of the Circuit Court for Baltimore County and to direct the Circuit Court for Baltimore County to dismiss all claims against all Defendants." We granted the motion for reconsideration in part and deleted any reference to the unjust enrichment and wage payment claims—a clarification that demonstrates the obvious circumstance that the matters were not before the Court. We denied the request for reconsideration insofar as Mark, Joel, and MAS asked that we reverse the entire judgment and dismiss all claims against the defendants. With this request, Mark, Joel, and MAS asked that we take action as to claims that were not before the Court. Had Mark, Joel, and MAS requested in the motion for reconsideration, for example, that this Court change the mandate by deleting the generic language remanding the case for "further proceedings, consistent with this opinion" and adding language stating that the case was to be remanded to the circuit court for that court to vacate the award of damages on the partnership count, the outcome may have been different. In any event, that we declined to change the mandate in response to the motion for reconsideration is of no consequence because the mandate in its present form authorized only further proceedings

consistent with the opinion, those being adjusting the damages award on the declaratory judgment count or vacating the award of damages altogether.

We acknowledge that perhaps the language of mandate could have been tailored more to the circumstances of the case as further proceedings were not necessary to vacate the award of damages to Harry. In hindsight, it may have been more prudent for us to have explicitly stated in the opinion and mandate that the case was to be remanded to the circuit court for that court to vacate the award of damages or to adjust the award to zero. Perhaps, what can be drawn from this is that providing more specific instructions in our mandates would be beneficial. Nonetheless, it is plain that the proceedings conducted by the circuit court on remand far exceeded the scope and intent of the mandate and opinion. Although Harry contends that the mandate could have been interpreted to mean that the remand was for the circuit court to reopen claims decided against him when he had not cross-appealed and to strike the judgments in favor of MAS and Saralee on those counts even though our opinion did not expressly say to do so, nothing in the mandate supports this view. If a mandate is ambiguous, however, we turn to the opinion and other surrounding circumstances to determine the intent of the court. See Carpenter Realty, 369 Md. at 561-62, 801 A.2d at 1025. To condone the interpretation of the mandate that Harry advances would be to read into the opinion what does not exist—instructions to: (1) reopen the unjust enrichment and wage payment claims, (2) vacate the judgments in favor of MAS and Saralee on the two claims, (3) make an award against MAS and Saralee, who was not a party to the proceedings in this Court, (4) disregard that there was no appeal or cross-appeal or cross-petition for a writ of *certiorari* concerning the unjust enrichment and wage

payment claims, and (5) cast aside the logical interpretation of the mandate that, consistent with the opinion, the award of damages on the partnership count was to be vacated, and that consistent with case law and the principles of entry of judgment, the circuit court's judgments on the unjust enrichment and wage payment claims were final enrolled judgments.

It is readily apparent that, in our opinion, we did not conclude that the case was to be remanded to the circuit court for further proceedings with respect to the unjust enrichment and wage payment claims. The plain language of the opinion is devoid of any statement announcing that the claims were to be reopened or any analysis that would lead to a finding of liability on either claim. Certainly, in evaluating whether a partnership had been formed, we determined that Harry's compensation had been wages rather than profit sharing and his payments to Saralee had been loans rather than capital contributions, but that determination would not automatically establish liability on the unjust enrichment and wage payment claims. This Court's opinion contained no discussion of the elements of either the tort of unjust enrichment or the requirements for a violation of the wage payment statute, much less a conclusion that liability had been established.[18]  In addition to the lack

---

[18]To prevail on a claim of unjust enrichment, a plaintiff must satisfy the following three elements:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

of a cross-petition for a writ of *certiorari* and the claims not being before the Court, there is no indication in the plain language of our opinion that this Court reached a conclusion that the circuit court erred with respect to the judgments on the unjust enrichment and wage payment claims.

Moreover, there is no question that Saralee was not a party to the appellate proceedings before this Court and that the circuit court did not have authority on remand to reopen a claim with respect to Saralee. Under the relevant statutes, Maryland Rule 8-131(b)(1), and our case law, generally, our jurisdiction to review a case decided by the Court of Special Appeals is governed by the issuance of a writ of *certiorari* and is limited to issues presented in the petition for a writ of *certiorari* and any cross-petition for which

---

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

Hill v. Cross Country Settlements, LLC, 402 Md. 281, 295, 936 A.2d 343, 351 (2007) (citation omitted).
Under the Maryland Wage Payment and Collection Law, an employer shall set regular pay periods and pay each employee at least once in every two weeks or twice in each month, see Md. Code Ann., Lab. & Empl. (1991, 2008 Repl. Vol.) ("LE") § 3-502(a)(1), and an employer must pay an employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated[,]" LE § 3-505(a). Pursuant to LE § 3-507.2(a), notwithstanding any remedy available under LE § 3-507 concerning enforcement of the Maryland Wage Payment and Collection Law by the Commissioner of Labor and Industry,

if an employer fails to pay an employee in accordance with § 3-502 or § 3-505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages.

such a writ has been granted.[19]  In this case, in the first appeal, MAS, Joel, and Mark filed in this Court a petition for a writ of *certiorari* seeking review of the Court of Special Appeals's determination that a partnership existed.  That was the sole question presented in the petition.  Saralee was not a party to the petition and there was no mention of the unjust enrichment or wage payment claims whatsoever.  In the petition, MAS, Joel, and Mark noted that the circuit court had ruled against Harry on six of his seven claims and that the circuit court had entered judgment against Harry and in favor of the other defendants, including Saralee.  Harry filed an answer to the petition and did not mention the unjust enrichment or wage payment claims, let alone raise an issue in the form of a cross-petition seeking review of the judgments as to those claims.  This Court granted the petition for a writ of *certiorari*.  Put simply, in granting the petition, it is more than evident that the only issue before this Court for review was the partnership claim, not any issue related to the judgments on the unjust enrichment and wage payment claims.  Certainly, no issue with respect to the judgment on the unjust enrichment claim that had been rendered in favor of Saralee, who was not a party to the petition, was before the Court.

---

[19]Pursuant to Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ") § 12-307(1), this Court has "[j]urisdiction to review a case or proceeding pending in or decided by the Court of Special Appeals in accordance with Subtitle 2 of this title[.]"  CJ § 12-201 provides in relevant part that, "in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court . . . any party . . . may file in the Court of Appeals a petition for certiorari to review the case or proceeding."  And, pursuant to CJ § 12-203, if this Court "finds that review of the case described in § 12-201 of this subtitle is desirable and in the public interest, the Court [] shall require by writ of certiorari that the case be certified to it for review and determination."  As we explained in Jones, 357 Md. at 419, 745 A.2d at 401, "[u]nder our certiorari process, this Court will only consider matters on appeal raised in a petition for writ of certiorari that we have granted." (Citation omitted).

Finally, we observe that the circuit court's determination that, in light of this Court's opinion in MAS Assocs., its earlier rulings in favor of the defendants on the unjust enrichment and wage claims were "no longer consistent with the law of this case" was erroneous. The circuit court's determination was an incorrect application of the doctrine of the law of the case. The "law of the case doctrine is one of appellate procedure" that stands for the principle that "[o]nce an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." Garner v. Archers Glen Partners, Inc., 405 Md. 43, 55, 949 A.2d 639, 646 (2008) (cleaned up). This principle has no application here because as we have explained, there was no appeal or cross-appeal and no cross-petition for a writ of *certiorari* for review of the circuit court's judgment with respect to the unjust enrichment and wage payment claims. The claims were not before us. And, in reviewing the matter that was before us, *i.e.*, the partnership claim, we did not determine that the circuit court erred in entering judgment in favor of the defendants as to the unjust enrichment and wage payment claims or that Harry was entitled to an award of damages on the claims. Simply put, we reached no conclusions on the unjust enrichment and wage payment claims for the circuit court to be bound by under the law of the case doctrine on remand.

For all of the reasons set forth herein, we reverse the judgments of circuit court and remand the case to that court with instructions to vacate the judgments against Petitioners with respect to the unjust enrichment and wage payment claims issued on November 6, 2020 and February 19, 2021 and to reinstate the original judgments in favor of Petitioners.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE JUDGMENTS AGAINST PETITIONERS AS TO UNJUST ENRICHMENT AND WAGE PAYMENT CLAIMS AND TO REINSTATE ORIGINAL JUDGMENTS IN FAVOR OF PETITIONERS. RESPONDENT TO PAY COSTS.**

Circuit Court for Baltimore County
Case No. 03-C-11-010759

Argued: June 3, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 54 & 59

September Term, 2020

_____

MAS ASSOCIATES, LLC, ET AL.

v.

HARRY S. KOROTKI

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Concurring Opinion by McDonald, J.,
which Hotten, J. joins.

_____

Filed: August 4, 2021

As the Court's opinion details, the key question originally litigated in the Circuit Court was whether Mr. Korotki's role in a mortgage lending entity was that of an employee/creditor or that of a partner – mutually exclusive outcomes. In its 2015 ruling, the Circuit Court held that he was a partner, not an employee/creditor – a ruling upheld by the Court of Special Appeals. We came to the opposite conclusion in an August 2019 opinion that held that the funds he contributed to the entity were loans, not capital contributions, and the payments he received were wages, not partnership distributions. As today's opinion relates, the mandate of the 2019 opinion did not simply reverse the Court of Special Appeals; it also sent the case back to the Circuit Court for "further proceedings." MAS, Mr. Wax, and Mr. Greenberg filed a motion for reconsideration that, among other things, asked the Court to change the mandate to a simple reversal and to direct the Circuit Court to dismiss all claims against them. This Court unanimously rejected that part of their motion for reconsideration.

On remand, the Circuit Court understandably sought to make sense of the mandate and of the "further proceedings" contemplated by this Court as a result of its decision that Mr. Korotki was an employee/creditor and not a partner. Unlike the Court of Special Appeals, which has some authority to certify questions of law or an entire action to us in advance of its own decision,[1] a Circuit Court is on its own in deciphering a mandate. The Circuit Court apparently believed it was to implement our holding that Mr. Korotki was an employee/creditor in those further proceedings. However, as outlined in today's opinion,

---

[1] Maryland Rule 8-304.

that was not the course to take, given the procedural posture of the case. Perhaps a key lesson from this case, as the Court's opinion today suggests, is the need for clarity in our opinions and mandates that provides clear instruction on how to implement the holding of an opinion.

Judge Hotten advises that she joins this opinion.